STATE OF MONTANA, Plaintiff,

**D.H. Blattner & Sons, Inc.,
Plaintiff–Intervenor,**

v.

**Wesley BREMMER, Shari Bremmer and Marissa Bremmer, Paula Bremmer and Sean Bremmer, Minor Children, Defendants.**

**No. CV 97–59–GF–DWM.**

United States District Court,
D. Montana,
Great Falls Division.

July 31, 1997.

William E. Jones, Charles E. McNeil, Garlington, Lohn & Robinson, PLLP, Missoula, MT, for plaintiff.

Benjamin R. Graybill, Graybill, Ostrem & Crotty, Great Falls, MT, for defendants.

Thomas E. Hattersley, III, Gough, Shanahan, Johnson & Waterman, Helena, MT, for intervenor plaintiff.

ORDER

MOLLOY, District Judge.

Plaintiffs State of Montana and plaintiff-intervenor D.H. Blattner & Sons, Inc. move for a preliminary injunction preventing the defendants from prosecuting their pending civil action in Blackfeet Tribal Court. The State's motion is DENIED with regard to the theory of subject-matter jurisdiction and GRANTED with regard to the theory of sovereign immunity, based on Judge Hatfield's ruling in *Montana v. Gilham,* 932 F.Supp. 1215 (1996). The motion of Blattner & Sons is DENIED. The reasons for these rulings are set forth below.

## I. Background

Defendant Wesley Bremner is an enrolled member of the Blackfeet Tribe. Bremner was injured while working on a road construction project under the supervision of Intervenor Blattner & Sons. The accident occurred within the exterior boundaries of the Blackfeet Indian Reservation, on land owned in fee by plaintiff State of Montana.

Mr. Bremner and his family sued Blattner & Sons and the State on March 7, 1997. On May 5, the State filed this case, seeking a declaration that the tribe lacks jurisdiction and also seeking a preliminary injunction halting the proceedings in tribal court. The State also seeks to enjoin the tribal case on the basis of sovereign immunity. On July 8, Blattner & Sons intervened as plaintiffs. Simultaneously, Blattner moved for an injunction, arguing the tribal court lacks subject-matter jurisdiction.

## II. DISCUSSION

### A. The Standard for Injunctive Relief

To obtain a preliminary injunction, a party must show either (1) probable success on the merits plus the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980). To determine whether injunctive relief is warranted in this case, I must make an assessment of the merits of the subject-matter jurisdiction and sovereign immunity claims as they appear on the present record.

### B. Subject–Matter Jurisdiction

■ The State and Blattner & Sons argue that the tribal court lacks subject-matter jurisdiction over this case because they are not tribal members. They rely primarily on the recent Supreme Court case of *Strate v. A–1 Contractors,* —— U.S. ——, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). In *Strate,* the plaintiff was injured in a collision with the defendant's gravel truck on a state highway within the Fort Berthold Reservation in North Dakota. Neither the plaintiff nor the defendant were tribal members. The Court held that the tribal court lacked jurisdiction. It reasoned that under *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), tribal courts lack jurisdiction over nonmembers except in two situations; 1) where parties have entered into consensual dealings with tribal members, and 2) where nonmember conduct directly affects the political integrity, the economic security, or the health or welfare of the tribe. *Id.* at ——– ——, 117 S.Ct. at 1409–10. (citing *Montana,* 450 U.S. at 565–66, 101 S.Ct. at 1258–59). In *Strate,* neither exception applied. The first did not apply because the plaintiff was not a party to the defendant's contract with the tribe. *Strate,* —— U.S. at ——, 117 S.Ct. at 1415. Addressing the second *Montana* exception, the Court was not willing to say that a "commonplace state highway accident," *involving only non-Indians,* directly affected the health, welfare, or political integrity of the tribe. *Id.* at ——– ——, 117 S.Ct. at 1415–16.

The question presented here differs from *Strate.* The Bremners are members of the tribe whose court is asserting jurisdiction. The State and Blattner argue that this distinction has no legal significance. They point out that in *Strate* and *Montana,* the Court did not discuss the membership status of the plaintiffs. Instead, the Court phrased its rulings as broad limits on tribal authority to regulate the conduct of nonmembers on non-Indian land. *See Strate,* —— U.S. at ——– ——, 117 S.Ct. at 1407–08; *Montana,* 450 U.S. at 565, 101 S.Ct. at 1258. The Brem-

ners argue that their status as tribal members creates a crucial distinction from *Strate*, and brings the case within the second *Montana* exception. They argue that the defendants have directly affected the welfare of the Blackfeet Tribe by injuring a tribal member. They make the additional argument that and the defendants' alleged conduct, i.e. maintaining an unsafe workplace, threatens other tribal members who work on state road construction projects. The Bremners further argue that the case has self-governmental implications, since the relief requested by the State would force them to seek recovery in an unfamiliar forum rather than in the court established by their own government.

I agree with the Bremners. Their status as tribal members brings the case within the second exception to the *Montana* test. Here, unlike in *Strate*, a tribal member has been injured. Thus, tribal welfare has been "directly" affected in a way it could not have been in *Strate*, where the injured party was a nonmember. *See Montana*, 450 U.S. at 566, 101 S.Ct. at 1259. The fact that the *Strate* opinion does not discuss the distinction be-tween member and non-member plaintiffs is unremarkable. Since the plaintiffs in *Strate* were non-members, any such discussion would have been meaningless. In short, the present facts raise an issue which was not before the *Strate* Court.

The plaintiffs argue that the second *Montana* exception applies only to conduct which affects the tribe as a whole rather than an individual member of the tribe. This reasoning is flawed because it inevitably leads to an intractable question: How many tribal members must be injured or killed before a defendant's conduct rises to a level that affects the health and welfare of the tribe? A family? A car full? A community? Answering this question on a case by case basis, takes into account geography as well as tribal membership and other explorations for exceptions leads only to confusion and faulty thinking.

In my view, injury to a single tribal member is sufficient to implicate the interests protected by the second *Montana* exception.

That exception protects not only a tribe's interest in its health and welfare, but its interests in self-government and political integrity as well. *See Strate*, —— U.S. at ——, 117 S.Ct. at 1415. The right of a political community to govern disputes which involve its members is an important part of self-governance. *See. e.g.*, 25 U.S.C. § 450(a) (Indian Self–Determination and Education Assistance Act) ("The Congress ... finds that ... the Indian people will never surrender their desire to control their relationships both among themselves and with non-Indian governments, organizations, and persons.") By providing a system for resolving such disputes, a government "invests the people ... with the direction of society." Alexis de Tocquevile, Democracy in America 334 (Schocken 1st ed.1961).[1]

In my view, direct injury to a single tribal member, that takes place on that member's reservation, triggers the second *Montana* exception. A tribal court has jurisdiction over the conduct of nonmembers when it injures or involves the health, welfare, or political integrity of the tribe.

In this case, tribal jurisdiction arguably exists under the first *Montana* exception as well. Blattner & Sons concedes that it hired Wesley Bremner as a construction worker. His accident occurred on the job. The job was within the exterior boundaries of his tribe's reservation. Thus, Bremner's claim relates to "the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565, 101 S.Ct. at 1258. Here too, *Strate* is distinguishable. Although the defendant in that case was also a contractor, the plaintiff had no interest in the defendant's contract with the tribe. *Strate*, —— U.S. at ——, 117 S.Ct. at 1415. By contrast, in this case the defendant voluntarily entered an employment contract with the plaintiff. This fact steals much of the weight from Blattner & Son's complaint that it is being forced to litigate this dispute an "unfamiliar court." *Compare id.* at ——, 117 S.Ct.

---

1. The *Strate* Court held that this interest was not implicated when the safety of tribal members was merely *threatened*. *See Strate*, —— U.S. at

——, 117 S.Ct. at 1415. Again, the present case involves actual injury to a tribal member.

at 1416. They chose to do business on the Blackfeet Reservation. Indeed, the Bremners can argue with equal force that they would be forced to bring their claim in an unfamiliar court if I were to grant the relief requested by Blattner & Sons.

 The exhaustion requirement casts further doubt on the merits of the plaintiffs' subject-matter jurisdiction claim. Normally, a party seeking to challenge tribal court jurisdiction must exhaust its tribal court remedies before seeking injunctive relief in federal court. *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16–17, 107 S.Ct. 971, 976–77, 94 L.Ed.2d 10 (1987). In the Blackfeet tribal court system, a party cannot take an interlocutory appeal from a trial court finding of jurisdiction. For this reason, exhaustion of the jurisdictional issue must await resolution of the merits and an appeal to the Blackfeet Appellate Court. *Id.* ("Until appellate review is complete, the Blackfeet Tribal Courts have not had a full opportunity to evaluate their claim and federal courts should not intervene."). Here, the lower tribal court has not yet ruled on the merits.

The plaintiffs argue that under footnote 14 of *Strate,* they need not exhaust their tribal remedies. Footnote 14 reads:

> When, as in this case, it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land governed by Montana's main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from such conduct. As in criminal proceedings, state or federal courts will be the only forums competent to adjudicate those disputes. Therefore, when tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise applicable exhaustion requirement must give way, for it would serve no purpose other than delay.

*Strate,* —— U.S. at —— n. 14, 117 S.Ct. at 1416 n. 14 [citations omitted]. On its face,

this footnote creates an exception to *LaPlante's* exhaustion requirement. The scope of this exception is coterminous with the *Montana* rule itself. In other words, where the *Montana* rule applies, parties do not have to exhaust tribal remedies, but where the *Montana* exceptions apply, they do.[2] On the record before me, it appears that one or both exceptions apply to the instant case. This case is not covered by footnote 14 of *Strate.* Under the facts of this case, exhaustion of tribal court remedies is required.

This opinion is based *on the present record.* I am required to rely on the representations of counsel for many of the pertinent facts. Further development of the record in tribal court may establish facts that strengthen or weaken the case for the application of the *Montana* exceptions. Development of an adequate factual basis for determining jurisdiction is one of the main purposes behind the exhaustion requirement. *See LaPlante,* 480 U.S. at 15–16, 107 S.Ct. at 976–77; *National Farmers Union Ins. Co. v. Crow Tribe,* 471 U.S. 845, 856, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (1985).

The likelihood that Blattner & Sons and the state will succeed on the merits of their subject-matter jurisdiction claim depends on whether they can avoid the requirement that they exhaust their tribal remedies. That question, in turn, depends on whether this case is governed by the main *Montana* rule, or instead falls under one of its exceptions. At this stage, it appears that either or both *Montana* exceptions apply. The merits of the plaintiffs' jurisdictional argument are uncertain at best. It would be illogical not to apply the exhaustion requirement, which is designed to allow tribal courts to address exactly this sort of uncertainty. Because they have not exhausted their tribal remedies, the plaintiffs are unlikely to succeed on the merits. Furthermore, I find that the balance of hardships created by further proceedings in tribal court does not justify injunctive relief.

---

2. The Court's reference to "land covered by *Montana's* main rule" is difficult to reconcile with the analysis of *Montana* and *Strate.* Both the *Montana* rule and its exceptions "cover" the same land: non-Indian-owned land within reservation boundaries. Whether a given case is governed by the main rule or one of its exceptions depends not on the land involved, but on whether the conduct in question (1) arises from consensual relationship with tribal members, or (2) affects tribal health, welfare, or political integrity.

## C. Sovereign Immunity

The state argues that even if the tribal court has jurisdiction over the Bremners' claims, it cannot grant relief because the State enjoys sovereign immunity in tribal court. The State relies on this court's decision in *Montana v. Gilham*, 932 F.Supp. 1215 (1996), which is presently on appeal before the Ninth Circuit. I have reviewed Judge Hatfield's opinion in *Gilham*. I find that deference to that opinion is appropriate. I further find that a stay of proceedings pending a decision by the Circuit will cause little hardship, since the case has been briefed and argued and a decision should be imminent.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

1. The motion of plaintiff Blattner & Sons, Inc. is DENTED.

2. By virtue of this court's opinion in *Montana v. Gilham*, 932 F.Supp. 1215, the motion of plaintiff State of Montana is GRANTED.

3. The defendants are hereby enjoined from further prosecution of cause no 97CA–154 against plaintiff State of Montana in the Blackfeet Tribal Court. This injunction shall remain in effect until further order of this court. This does not prohibit prosecution of any other claim in Blackfeet Tribal Court.

4. Within 10 days of the issuance of the Ninth Circuit's decision in *Montana v. Gilham*, District Court No. CV–95–041—GF, the parties shall file a status report advising the on what further proceedings should be conducted in this case.